UNITED STATES DISTRICT COURT

NORTHERN DISTRICT OF CALIFORNIA

UNITED STATES OF AMERICA,

Plaintiff,

v.

ELBIN CRUZ-CRUZ,

Defendant.

Case No. 25-cr-00199-WHO-1

**ORDER DISMISSING THE CASE WITH PREJUDICE**

Re: Dkt. Nos. 27, 31

Before the court is defendant Elbin Cruz-Cruz's ("Cruz-Cruz") Motion to Dismiss the Information with prejudice. The Executive Branch of the federal government, by and through the United States Attorney Office ("USAO"), began to criminally prosecute Cruz-Cruz for drug distribution. Then the Executive Branch, by and through the Department of Homeland Security, deported Cruz-Cruz to his home country of Honduras. Notwithstanding the deportation, the USAO wants to preserve a potential prosecution against Cruz-Cruz by dismissing the Information without prejudice. But because Cruz-Cruz's constitutional and statutory rights in the criminal matter have been severely impacted by the government's decision to deport him, I will dismiss the Information WITH PREJUDICE.

**BACKGROUND**

On June 17, 2025, Cruz-Cruz was arrested by the San Francisco Police Department in an undercover operation. Complaint [Dkt. No. 1] at 5. The government filed an Information charging Cruz-Cruz with possession with the intent to distribute fentanyl and methamphetamine in violation of 21 U.S.C. §§ 841(a)(1) and (b)(1)(C) on July 16, 2025. Information [Dkt. No. 13] at 1–2.

On August 21, 2025, Magistrate Judge Sallie Kim held a detention hearing and ordered Cruz-Cruz released on bond. Order Setting Conditions of Release [Dkt. No. 29]. The conditions

of Cruz-Cruz's release required, among other things, that he comply with location restrictions and stay within the Northern District of California, and that he remain in his home outside of medical, employment, and court-related excursions. *Id.* Additionally, Cruz-Cruz had to surrender his passport or other travel documents to Pretrial Services within four days of the hearing. *Id.*

At a status conference one week later, the government informed me that Cruz-Cruz was in the custody of Immigration Customs and Enforcement ("ICE"), a subdivision of the Department of Homeland Security ("DHS"), and that he was pending deportation to his home country of Honduras. *See* August 28, 2025 Minute Order [Dkt. No. 30]. The government then orally moved to dismiss the case without prejudice. *Id.* Defense counsel, although in agreement that the case should be dismissed, disagreed that the case should be dismissed without prejudice. *Id.* I allowed the parties to brief the matter, which they did. *See* Motion to Dismiss Complaint with Prejudice ("Mot.") [Dkt. No. 31], Response to Motion ("Oppo.") [Dkt. No. 36], Reply to Response ("Reply") [Dkt. No. 37]. I held a hearing on the motion on November 20, 2025. Dkt. No. 39.

At the hearing, counsel on both sides confirmed that immediately after the hearing before Judge Kim, ICE detained Cruz-Cruz. Mot. at 3. He was then transferred out-of-district to a facility in Bakersfield, California and moved to a detention center in Texas afterwards. *Id.* He was subsequently deported to Honduras. *Id.* Because of Cruz-Cruz's immediate detainment, multiple transfers, and deportation, his defense counsel has been unable to contact or communicate with him since the date of the detention hearing before Judge Kim on August 21, 2025. *Id.*

## LEGAL STANDARD

When a court dismisses a criminal case pursuant to government request, Federal Rule of Criminal Procedure 48(a) governs. It reads, in pertinent part, that "[t]he government may, with leave of the court, dismiss an indictment, information, or complaint." Fed. R. Crim. Proc. 48(a). The "leave of the court" requirement allows a court to consider the possibility of prosecutorial harassment as well as the "public interest, fair administration of criminal justice and preservation of judicial integrity." *United States v. Strayer*, 846 F.2d 1262, 1265 (10th Cir. 1988). Rule 48 also allows a court to dismiss a criminal case absent government request "if unnecessary delay occurs in: (1) presenting a charge to a grand jury; (2) filing an information against a defendant; or

United States District Court
Northern District of California

(3) bringing a defendant to trial." Fed. R. Crim. Proc. 48(b).

Outside of Rule 48, a court may instead dismiss a criminal case by relying on its supervisory powers. *See United States v. Hasting*, 461 U.S. 499, 506(1983) ("Guided by considerations of justice, and in the exercise of supervisory powers, federal courts may, within limits, formulate procedural rules not specifically required by the Constitution or the Congress. The purposes underlying use of the supervisory powers are threefold: to implement a remedy for violation of recognized rights, to preserve judicial integrity by ensuring that a conviction rests on appropriate considerations validly before the jury, and finally, as a remedy designed to deter illegal conduct.") (internal quotation marks and citations omitted); *see also United States v. Escobedo-Molina*, 790 F. Supp. 3d 1283 (D.N.M. 2025) (denying government motion to dismiss Information without prejudice pursuant to Rule 48 and instead dismissing Information with prejudice pursuant to the court's supervisory power).

The decision to dismiss a criminal case pursuant to a court's supervisory powers, whether the dismissal is with or without prejudice, is within the sound discretion of the district court judge. *See U.S. v. Barrera-Moreno*, 951 F.2d 1089, 1091 (9th Cir. 1991). Dismissal based solely on a due process violation, however, requires a factual finding of government conduct that is "so grossly shocking and so outrageous as to violate the universal sense of justice." *Id.* (internal quotation marks and citation omitted).

## DISCUSSION

Defense counsel argues that this case should be dismissed with prejudice pursuant to the court's supervisory power. The government chose to deport Cruz-Cruz while the criminal case was pending. Cruz-Cruz is not challenging the legality of his removal in this proceeding, and I will assume that the Executive Branch was within its authority to remove him. But that decision impacted Cruz-Cruz's rights in the prosecution that the Executive Branch had been pursuing. Federal district courts have found similar governmental actions to run afoul of a defendant's Fifth and Sixth Amendment and statutory rights. *See Escobedo-Molina*, 790 F. Supp. 3d at 1289, n.1 (collecting cases).

3

United States District Court
Northern District of California

## I.    VIOLATIONS OF RIGHTS IN THE CRIMINAL PROCEEDING

### 1.    Bail Reform Act Violation

The purpose of the Bail Reform Act of 1984 "was to give courts authority to make release decisions that recognize the danger a person may pose to others if released." *U.S. v. Perez-Garcia*, 96 F.4th 1166, 1175 (9th Cir. 2024). "The Bail Reform Act authorizes federal courts to release defendants awaiting trial subject to specific conditions that protect the community from the risk of crimes they may commit while on bail." *Id.* (citation modified). If a judicial officer determines that a noncitizen poses a flight risk or "danger to any other person or the community," the Bail Reform Act permits temporary detention while the court works with law enforcement, parole, or immigration officials to determine next steps. 18 U.S.C. § 3142(d). An individual's status as a noncitizen is not a factor in the district court's analysis in determining whether to detain a defendant.

Here, Judge Kim determined that Cruz-Cruz was *not* a flight risk or danger to the community. *See* Dkt. Nos. 28, 29. By ordering him released on bail, Judge Kim granted Cruz-Cruz his statutory right to pretrial release, subject to the conditions outlined in her order. *See* Dkt. No. 29. Deportation eviscerated that right.

The government argues that the Immigration and Nationality Act, "governs ICE's authority to civilly detain a noncitizen pending removal proceedings, [and] confers authority on the Executive Branch to facilitate the removal of noncitizens from the country." Oppo. 6. True enough. But in similar circumstances, the Ninth Circuit has held:

> The government may . . . exercise its judgment that the public interest in criminally prosecuting an alien is greater than the public interest in swiftly removing him. The government may, therefore, elect to deliver the alien to the United States Attorney's Office for prosecution, as it did here, instead of removing him immediately . . . . Having made this choice, however, the government may not use its discretionary power of removal to trump a defendant's right to an individualized determination under the Bail Reform Act.

*U.S. v. Santos-Flores*, 794 F.3d 1088, 1091 (9th Cir. 2015).

ICE's decision to detain, remove from the district, and ultimately deport Cruz-Cruz immediately after Judge Kim's decision, undermined a judicial determination and deprived Cruz-Cruz of his right to pretrial release. The Executive Branch made the choice to deport Cruz-Cruz

and so the USAO must live with the consequences of that choice. One consequence for the prosecution was a violation of the Bail Reform Act. *But see United States v. Hernandez-Olea*, 407 F.Supp.3d 1351 (M.D. Ga. 2019) (noting a split between courts and dismissing an illegal reentry case without prejudice after concluding there were no statutory or constitutional violations).

### 2.    Speedy Trial Violation

Another consequence was a would-be violation of Cruz-Cruz's right to a speedy trial. The Sixth Amendment guarantees that "[i]n all criminal prosecutions, the accused shall enjoy the right to a speedy . . .trial." U.S. Const. amend. VI. In *Barker v. Wingo*, the Supreme Court devised a four-part test to determine whether a constitutional right to a speedy trial has been violated. 407 U.S. 514, 530 (1972). The *Barker* test requires that a court balance: "[1] the length of delay; [2] the reason for the delay; [3] the defendant's assertion of his right; and [4] prejudice to the defendant." *Id.*

At the time of Cruz-Cruz's detention and the government's oral motion for dismissal without prejudice, there had been no "length of delay" to consider. Because the government first moved to dismiss the case just after Cruz-Cruz's detention and pending deportation, that effectively stopped the clock on whether I could consider Cruz-Cruz's speedy trial rights to have been violated. The parties dispute whether the obvious *imminent* delay caused by Cruz-Cruz's deportation would result in any prejudice. I conclude that it must. As a sister court succinctly wrote in considering whether a defendant's constitutional right to a speedy trial had been implicated following a deportation in a similar case:

> It was the Government that deported Defendant, rendering him fundamentally unable to stand trial. Although Defendant has not asserted his speedy trial rights as such, he cannot be faulted for this seeming omission: as discussed above his counsel has been unable to communicate with him since his deportation. Finally, seeing as the indefinite delay in this case would practically amount to the denial of a trial whatsoever, it is quite obviously prejudicial to Defendant. Accordingly, the Court finds that Defendant's Sixth Amendment right to a speedy trial has been violated.

*Escobedo-Molina*, 790 F. Supp. 3d at 1291. Cruz-Cruz's constitutional right to a speedy trial was necessarily violated in light of the government's decision.

The Speedy Trial Act, which gives statutory effect to a defendant's constitutional right to a

United States District Court
Northern District of California

United States District Court
Northern District of California

speedy trial, requires a court to consider several factors. *See United States v. Walker*, 68 F.4th 1227, 1230 (9th Cir. 2023); *see also U.S. v. Daychild*, 357 F.3d 1082, 1090 (9th Cir. 2004) ("Congress passed the Speedy Trial Act . . . to facilitate the disposition of criminal proceedings and to minimize delays between arrest and trial. . . . A criminal defendant's trial must normally commence within seventy days of the filing of the indictment or the defendant's initial court appearance, whichever is later.") (citation modified). "In determining whether to dismiss the case with or without prejudice, the court shall consider, among others, each of the following factors: [1] the seriousness of the offense; [2] the facts and circumstances of the case which led to the dismissal; and [3] the impact of a reprosecution on the administration of this chapter and on the administration of justice." 18 U.S.C. § 3162(a)(2). The offense is certainly serious. But the facts and circumstances leading to the dismissal, Cruz-Cruz's deportation, mean that in order to vindicate his speedy trial and other rights, he would have had to (likely, unlawfully) reenter the country, make himself known to the government and his defense counsel, and put on his case within days or, at most, weeks of his ICE detention in order for the government to successfully meet its obligations pursuant to the Speedy Trial Act. That puts an unreasonable burden on Cruz-Cruz, when the purpose of the Speedy Trial Act is to require the government to provide a defendant with a speedy trial. And the impact on the administration of justice is, as discussed below, substantial if the government is allowed to violate constitutional and statutory rights in one prosecution, dismiss it without prejudice, and then initiate a new case after deportation.

For those reasons, I conclude that the government's actions would violate both Cruz-Cruz's constitutional right to a speedy trial and the Speedy Trial Act in the event I allowed dismissal without prejudice.

### 3.    Additional Constitutional Violations

The government's deportation of Cruz-Cruz has impacted additional constitutional rights related to his criminal trial. The Sixth Amendment provides that "[i]n all criminal prosecutions,

6

the accused shall enjoy the right . . . to have the Assistance of Counsel for his defence." U.S. Const. amend. VI. This quintessential constitutional right provides "the opportunity for a defendant to consult with an attorney and to have him investigate the case and prepare a defense for trial." *Kansas v. Ventris*, 556 U.S. 586, 590 (2009). And the Fifth Amendment ensures that "[n]o person shall be deprived of life, liberty, or property, without due process of law." U.S. Const. amend. V. That requires that "a criminal defendant will be treated with that fundamental fairness essential to the very concept of justice." *U.S. v. Valenzuela-Bernal*, 458 U.S. 858, 872 (1982) (internal quotation marks and citation omitted).

There is no doubt that the government's decision to detain and deport Cruz-Cruz immediately after his detention hearing "has vitiated these fundamental rights." *Escobedo-Molina*, 790 F. Supp. 3d at 1290. His counsel has been unable to communicate with him since he was detained in August. Mot. 3. Any hypothetical cross-border communication between Cruz-Cruz and his counsel is not only impracticable, but likely insufficient to meet his constitutional guarantees. *See Main v. Moulton*, 474 U.S. 159, 170 (1985) ("To deprive a person of counsel during the period prior to trial may be more damaging than denial of counsel during the trial itself."). There is no sense of "fairness" or the "very concept of justice" for Cruz-Cruz considering the manner in which the government proceeded. *Valenzuela-Bernal*, 458 U.S. at 872. Its actions violated Cruz-Cruz's Fifth and Sixth Amendment rights in connection with the prosecution.

## II.    DISMISSAL WITH PREJUDICE

The parties do not dispute that dismissing the case, generally, is appropriate. *See generally*, Mot., Oppo. The issue is whether to dismiss Cruz-Cruz's Information with or without prejudice. In light of the above-enumerated statutory and constitutional violations to which Cruz-Cruz has now been subjected with respect to the criminal trial because of his deportation, I conclude in the exercise of my supervisory powers that dismissal with prejudice is appropriate.

I recognize that dismissal of an indictment with prejudice is "extraordinary relief" that

United States District Court
Northern District of California

requires a showing of prejudice. *U.S. v. Morrison*, 449 U.S. 361, 363 (1981) (reversing a Third Circuit decision concluding a Sixth Amendment violation was sufficient to show such a remedy was warranted absent a finding of prejudice). But two reasons provided by the Supreme Court in *Hasting* that allow a court to exercise its supervisory powers in this way require such a finding of prejudice here: "to implement a remedy for violation of recognized rights . . . and . . . as a remedy designed to deter illegal conduct." 461 U.S. at 505.

Cruz-Cruz's statutory and constitutional rights in this prosecution have been severely infringed and he has suffered significant prejudice—Cruz-Cruz's right to pretrial release was immediately revoked, he will not receive a speedy trial were he to return to the country, and he has in effect lost all access to counsel and support in the preparation of any trial. This supports a conclusion that his process, insofar as his criminal proceedings go, has been unfair and not in the interest of justice.

The government argues principally that "[a] district court is 'duty bound' to grant the government's Rule 48(a) motion to dismiss an indictment without prejudice unless 'it specifically determines that the government is operating in bad faith' in pursuing the motion." Oppo. 4 (citing to *U.S. v. Mujahid*, 491 Fed. App'x. 859 at *1 (9th Cir. 2012) (citing *United States v. Hayden*, 860 F.2d 1483, 1487 (9th Cir. 1988))). This argument is too narrow. A district court may deny the government's motion for two reasons. The government relies on the first. But it recognizes the second, which is that a court may deny the government's motion if it is "prompted by considerations clearly contrary to the public interest" or if there is a concern of "prosecutorial harassment." *U.S. v. Wallace*, 848 F.2d 1464, 1468 (9th Cir. 1988). It claims that it is in the public interest to defer to the Executive Branch when it wishes to dismiss a criminal case. Oppo. 5. While I generally agree with that assertion, I disagree when doing so infringes on a defendant's constitutional and statutory rights as it did here.

The government was entitled to prosecute Cruz-Cruz, as it started to do. It was also

United States District Court
Northern District of California

apparently entitled to deport him, which it did. What it is not entitled to do is violate his statutory and constitutional rights with respect to the already pending prosecution and then begin a new prosecution at its discretion. The government cannot have its cake and eat it too. The government's attempt to do so is "clearly contrary to the public interest." I would be allowing the Executive Branch to disregard a court's determination pursuant to the Bail Reform Act that Cruz-Cruz was not a danger to the community or a flight risk, looming Speedy Trial Act violations, and Cruz-Cruz's Fifth and Sixth Amendment rights if I dismissed without prejudice. *Wallace*, 848 F.2d 1464. Considering all these factors, I conclude that dismissal with prejudice is an appropriate remedy.

**CONCLUSION**

Accordingly, and as an exercise of the court's supervisory powers, the Information is DISMISSED WITH PREJUDICE. The Clerk shall close the case [1]

**IT IS SO ORDERED.**

Dated: March 2, 2026

William H. Orrick
United States District Judge

---

[1] The motion for pretrial detention is MOOTED by this Order. *See* Dkt. No. 27.

9